UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

STACY B. FERRARA, in her capacity )
as Trustee of the Chapter 7 )
Bankruptcy Estate of CASEY )
ROBERTS, )
    Plaintiff, )
)
                                    )   C.A. No. 20-534-JJM-PAS
v. )
)
ELI B. GRIFFIS and CAELAH S. )
GRIFFIS, )
    Defendants. )

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Plaintiff Stacy B. Ferrara as Trustee of the Chapter 7 Bankruptcy Estate of Casey Roberts seeks a declaration that certain mortgages continue to encumber a property in Jamestown, Rhode Island that Casey Roberts owned as tenants in the entirety with her husband Garret Roberts. Plaintiff claims that these mortgages remained valid liens against Ms. Roberts' interest in the property despite Mr. Roberts' bankruptcy that stripped the liens from the property under 11 U.S.C. § 506(d). Defendants Eli B. and Caelah S. Griffis, subsequent purchasers of the Jamestown property, move to dismiss, claiming that when they bought the property it was not subject to the secondary mortgages because the Bankruptcy Court voided them as wholly unsecured.

## I. BACKGROUND[1]

Casey and Garret Roberts owned real property at 223 Hull Cove Farm Road in Jamestown, Rhode Island ("Property") as tenants by the entirety. The couple granted several mortgages, including to: JP Morgan Chase for $3.4 million that was the first mortgage on the Property ("Senior Mortgage"); Finch Investments Associates, LLC ("Finch") for $125,000 (recorded in 2008); and John Sahagian ("Sahagian") for $150,000 (recorded in 2009) (the latter two together, "the Junior Mortgages").

In 2010, Mr. Roberts filed for Chapter 11 bankruptcy and listed the Property as part of his bankruptcy estate. He declared six liens on the Property. Finch was the fourth lien and Sahagian was the sixth. Both participated in the Mr. Roberts' bankruptcy, and both were certified as receiving all pleadings in the case.

Mr. Roberts moved to avoid the Junior Mortgages under 11 U.S.C. § 506(d). ECF No. 10-2. This process is known as lien stripping, a process by which the court strips the junior liens from the real estate securing the debt where the value of the property is less than the amount owed to the first mortgagee. Finch at first objected to the lien stripping motion and then withdrew its objection. ECF No. 10-3, 10-4, 10-5. The Bankruptcy Court granted the lien stripping motion, holding that the

---

[1] The Court draws the facts from the Trustee's Complaint. ECF No. 1. The Court also takes judicial notice of the Confirmation Order, ECF No. 10, and considers, as it may, other filings and documents referenced in this Motion. *See e.g., Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) ("In deciding a motion to dismiss ... a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.").

secondary mortgages were "wholly unsecured" and were "avoid[ed] in [their] entirety." ECF No. 10-6 at 3.

Mr. Roberts filed a First Amended Plan of Reorganization ("Plan"). ECF No. 10-7.[2] Neither Finch nor Sahagian objected to the Plan, and Finch submitted an affidavit in support of the Plan. ECF No. 10-8 (Finch "fully support[s] the Debtor's efforts to reorganize under Chapter 11 and the Debtor's attempt to gain confirmation of the Plan.")

The Bankruptcy Court in 2011 entered an Order Confirming the First Amended Plan of Reorganization ("Confirmation Order"). ECF No. 10-1. The Order declared that the Junior Mortgages were unsecured and discharged by the lien stripping process under 11 U.S.C. 506(d) because the Senior Mortgage exceeded the value of the Property.[3] The Bankruptcy Court stripped the liens from the Property "in their entirety." ECF No. 10-1 at 4.

---

[2] "Pursuant to 11 U.S.C. §506(d) and Federal Bankruptcy Rule 3012, the mortgage lien held by Finch Investments on the Jamestown Property shall be determined to be wholly unsecured and included in this Class Four. Pursuant to 11 U.S.C. §506(d) and Federal Bankruptcy Rule 3012, the mortgage lien held by John Sahagian on the Jamestown Property shall be determined to be wholly unsecured and included in this Class Four." ECF No. 10-7 at 7.
  "On the Effective Date of confirmation, all assets of the Confirmed Debtor shall vest in the Debtor free and clear of all liens, interests, and encumbrances of any kind except those specifically retained or created hereunder." ECF No. 10-7 at 11.

[3] "Pursuant to the terms of the Plan, and 11 U.S.C. §506(d) and Federal Bankruptcy Rule 3012, the following liens shall be determined to be a wholly unsecured and avoided in their entirety: . . . d. mortgage lien held by Finch Investments on 223 Cove Farm Cove Road, Jamestown, RI, and e. mortgage lien held by John Sahagian on 223 Hull Farm Cove Road, Jamestown, RI." ECF No. 10-1 at 4.

Two years later, the Roberts sold the Property to Defendants Elis B. and Caelah S. Griffis for $4.3 million. The Roberts used part of the proceeds to satisfy the Senior Mortgage, but $690,000 profit remained. They did not apply any of the profit to satisfy any of the notes secured by the Junior Mortgages. After the sale, Finch sued Casey Roberts to recover the unpaid debt under the promissory note. During that litigation, Finch moved for summary judgment on the debt. Finch acknowledged in its motion that the Finch mortgage was no longer in force and effect. ECF No. 10-10 at 4. ("Pursuant to the terms of the Chapter 11 Plan filed by Defendant's husband, the mortgage in question was subsequently "stripped" off the property since it was deemed to be an unsecured loan due to the mortgages ahead of it, which meant that the mortgages, in essence, attached no equity in the property and was subsequently treated as unsecured debt."). Finch received a judgment on the note against Casey Roberts for $243,794.72. ECF No. 10-11 at 2.

In 2016, Casey Roberts filed for Chapter 7 bankruptcy. Plaintiff Stacy B. Ferrara, Trustee of this bankruptcy ("the Trustee"), acquired the Finch and Sahagian debt. The Trustee therefore acquired all the rights – but only the rights – of Finch and Sahagian.

The Trustee filed this suit against the Griffises, the current owners of the Property.[1] The parties dispute whether the Bankruptcy Court properly discharged the Finch and Sahagian mortgages as to Casey Roberts' interest in the Property. The

---

[1] The Griffises are innocent bona fide purchasers of the property. Out of the blue, the Trustee sued them and seeks to impose liens on their Property to which they have no relationship.

4

Trustee seeks a declaratory judgment stating that the Junior Mortgages are still valid and still encumber the Property.

## III. STANDARD OF REVIEW

Defendants move, under Fed. R. Civ. P. 12(b)(6), to dismiss the claims brought against them. The Federal Rules of Civil Procedure require a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must have sufficient factual allegations that plausibly state a claim upon which a court may grant relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard requires more than a recitation of elements and must allow the court to draw a reasonable inference that a defendant is liable. *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009).

## IV. DISCUSSION

The Griffises argue that the Bankruptcy Court discharged the Junior Mortgages in Mr. Roberts' Chapter 11 bankruptcy such that their Property is no longer encumbered by them. The Confirmation Order said unambiguously that the Finch and Sahagian liens were "wholly unsecured and avoided in their entirety."[5] ECF No. 10-6 at 3. The Trustee argues that Casey Roberts' interest in the Property was not part of Garret Roberts' bankruptcy estate because it was not a "claim" as

---

[5] Finch acknowledged in its state court action against Casey Roberts the Finch Mortgage was no longer in force and effect. ECF No. 10-10 at 6.

5

defined by the Bankruptcy Code, and therefore the determination of the secured status of the Junior Mortgages as to Garret Roberts under 11 U.S.C. § 506 did not affect the rights of the creditors as to Casey Roberts' interest in the Property.

The Court need not address the unresolved issue – whether a bankruptcy court can strip a lien from property owned as tenants by the entirety when only one spouse is before the bankruptcy court - because the Bankruptcy Court Confirmation Order was final and enforceable in accordance with its express terms and may not be collaterally attacked based on principles of judicial estoppel and res judicata. *See Payless Wholesale Distribs.. Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993) (debtor judicially estopped from asserting claim in later proceeding that was not disclosed in bankruptcy case).

Both Finch and Sahagian had notice of Garret Roberts' Chapter 11 bankruptcy, were certified as receiving all pleadings in the case, and took part in the case. The Trustee's assignors, Finch and Sahagian, failed to challenge the Bankruptcy Court's final Confirmation Order entered ten years ago. Neither Finch nor Sahagian objected to the Confirmation Order declaring that Junior Mortgages were unsecured and discharged "in their entirety" by the lien stripping process. *In re DiBerto*, 171 B.R. 461, 471 (Bankr. D.N.H. 1994) ("when a creditor has notice and a full opportunity to make its views and objections known during the reorganization and confirmation process, the creditor is bound by the terms of the reorganization plan upon the entry of the confirmation order"). Neither appealed the Bankruptcy Court's final Confirmation Order confirming the Plan. In fact, Finch affirmatively

consented to the debtor's motion to strip the Junior Mortgage liens "in their entirety" from the Property. Because the Trustee brings this action standing in the shoes of Finch, it is subject to the actions and inactions of Finch during and after the bankruptcy proceedings. The attempt to overturn the effect of the final Confirmation Order is simply too late. The Bankruptcy Court's ruling is final, and the Trustee of Casey Roberts' bankruptcy may not now challenge the validity of that ruling.[6]

## V. CONCLUSION

The Bankruptcy Court unambiguously discharged the Finch and Sahagian mortgages under 11 U.S.C. § 506(d) in Garret Roberts' Chapter 11 Bankruptcy Final Confirmation Order. The unobjected to and unappealed Confirmation Order of the Bankruptcy Court controls – the Finch and Sahagian mortgages do not encumber the Property now owned by the Griffises. The Court GRANTS the Motion to Dismiss. ECF No. 10.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

July 29, 2021

---

[6] The Trustee also argues that when the Property was sold to the Griffises, the sale terminated the couple's tenancy by the entirety, and entitles Ms. Roberts to the economic value of her share of the proceeds. The Court agrees that the sale of the Property severed the tenancy by the entirety, but her argument is moot because the Bankruptcy Court had discharged the Junior Mortgages before the sale.

7